### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : **Civil Action No. 1:22-CV-10565** |
| | : |
| **CARL IBERGER & TIMOTHY IBERGER,** | : |
| | : |
| **Defendants.** | : |
| | : |

### <u>PLAINTIFF'S ASSENTED-TO MOTION FOR ENTRY OF CONSENT JUDGMENTS</u>

Plaintiff U.S. Securities and Exchange Commission ("SEC") hereby moves this Court, with the assent of both Defendants, to enter the Final Judgments submitted herewith. The SEC and Defendants Carl Iberger and Timothy Iberger have reached a settlement of this matter, and Defendants have consented to the entry of the proposed judgments. In support, the SEC states:

### <u>Background</u>

1.     On April 15, 2022, the SEC filed its Complaint against Defendants Carl Iberger and Timothy Iberger ("Defendants") alleging, *inter alia*, that they engaged in insider trading in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder. Specifically, the Commission alleged that Defendant Carl Iberger, who was the Chief Financial Officer of Precipio, Inc., illicitly provided his son Defendant Timothy Iberger and another individual with material, nonpublic information concerning the company's plan to distribute a COVID-19 serology antibody test that had received Emergency Use Authorization from the U.S. Food and Drug Administration. The Commission further alleged that Defendant Timothy Iberger and the other tipped individual subsequently purchased Precipio stock one day

prior to the public announcement of this information, and then profited thereafter as the stock price rose on market demand caused by the information's public release.

2.      The SEC and Defendants have now reached a settlement in this case.  Attached hereto as **Exhibit 1** is the executed Consent of Defendant Carl Iberger.  Attached hereto as **Exhibit 2** is the executed Consent of Defendant Timothy Iberger.  The Consents set forth the terms of the Defendants' settlements with the Commission.

3.      Attached hereto as **Exhibit 3** is the proposed Final Judgment to which Defendant Carl Iberger has agreed.  The Consent of Defendant Carl Iberger, **Exhibit 1**, includes consent to entry of his proposed Final Judgment, **Exhibit 3**.

4.      The proposed Final Judgment against Defendant Carl Iberger includes injunctive relief, a civil money penalty of $69,223, and a bar, for a period of 5 years, from serving as an officer or director of any issuer required to register securities, or to file reports, with the Commissions under certain provisions of the federal securities laws.  *See* **Exhibit 3**, §§ I, II, and III.

5.      Attached hereto as **Exhibit 4** is the proposed Final Judgment to which Defendant Timothy Iberger has agreed.  The Consent of Defendant Timothy Iberger, **Exhibit 2**, includes consent to entry of his proposed Final Judgment, **Exhibit 4**.

6.      The proposed Final Judgment against Defendant Timothy Iberger includes injunctive relief, disgorgement of $68,350, with prejudgment interest of $3,305, and a civil money penalty of $68,350.  *See* **Exhibit 4**, §§ I and II.

### Approval of Settlement Terms

7.      Approval of a settlement in an SEC enforcement case is appropriate where it is "fair and reasonable, with the additional requirement that the public interest would not be

disserved, in the event that the consent decree includes injunctive relief." *SEC v. Citigroup Global Markets, Inc.,* 752 F.3d 285, 294 (2d Cir. 2014). Factors to be considered include (1) the basic legality of the decree; (2) whether the terms of the decree, including its enforcement mechanism, are clear; (3) whether the consent decree reflects a resolution of the actual claims in the complaint; and (4) whether the consent decree is tainted by improper collusion or corruption of some kind. *Id.* at 294-95 (internal citations omitted).

8.     Given the allegations in the Complaint, which the Defendants neither admit nor deny, the relief set forth in paragraphs 4 and 6 is a fair and reasonable resolution of this matter and the permanent injunctions and the five-year officer and director bar will serve the public interest.

The proposed Final Judgments are legal and their terms are clear and enforceable. The permanent injunctions against future violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder are precise in prohibiting future statutory violations. These permanent injunctions are a standard form of relief ordered in securities enforcement actions in this district. *See, e.g., SEC v. Nothern*, 1:05-cv-10983-NMG (D. Mass.), ECF No. 274 (Final Judgment), § I (ordering imposition of permanent injunction against violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder); *SEC v. Cody*, 1:16-cv-12510-FDS (D. Mass.), ECF No. 62 (Final Judgment) (imposing permanent injunction against violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder and Section 206(1)-(2) of the Investment Advisers Act of 1940). Likewise, the five-year officer and director bar is clear in identifying the precise types of issuers that Defendant Carl Iberger his prohibited from serving as an officer or director. *See* **Exhibit 3**, § II (defining the types of issuers encompassed by the bar). The proposed Final Judgments represent resolution of the Commission's insider trading claims against the

3

Defendants.  Further, the parties have acted independently and appropriately in resolving this matter.  As reflected in the Defendants' Consents, the Defendants offered to settle this matter voluntarily and without any threats, offers promises or inducements of any kind from the Commission.  *See* **Exhibit 1**, ¶6; **Exhibit 2**, ¶6.  Each Defendant was represented by counsel who had an opportunity to review and approve the form of consent.  *See* **Exhibit 1**, p.6; **Exhibit 2**, p.6.

### <u>Disgorgement of Defendant Timothy Iberger's Net Profits – To Be Sent to Treasury</u>

9.      The proposed Final Judgment against Defendant Timothy Iberger, **Exhibit 4**, includes requiring him to disgorge the net profits from his violations, orders that the disgorged funds be sent to the Treasury, and includes a finding that this is consistent with equitable principles.  The following discussion explains the bases for these provisions.  *See* **Exhibit 4**, § II.

10.      "In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement." Section 21(d)(7) of the Exchange Act, 15 U.S.C. § 78u(d)(7);[1] *see also Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020) ("a disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under [15 U.S.C.] § 78(d)(5) [Section 21(d)(5) of the Exchange Act]").  Here, the disgorgement amount of $68,350 represents Defendant Timothy Iberger's net profits.

11.      Disgorged funds may be sent to the Treasury consistent with Section 21(d)(7) and

---

[1] Section 21(d)(7) was added to the Exchange Act by Section 6501(a) of the National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, enacted January 1, 2021.  The relevant provisions of the NDAA apply "to any action or proceeding that is pending on, or commenced on or after, the date of" the NDAA's enactment.  NDAA, Section 6501(b).

*Liu* when doing so is "consistent with equitable principles." *Liu*, 140 S. Ct. at 1949.[2]

12.    Here, the order in the Final Judgment that the disgorged funds be sent to the Treasury is "consistent with equitable principles."  While the SEC endeavors to distribute disgorged funds to harmed investors when that is feasible and practical, distribution of the disgorged funds to harmed investors is not feasible or practical in this case.  On July 29, 2020 – the day that the complaint alleges Defendant Timothy Iberger and Tippee 2 purchased 25,450 shares of Precipio stock based on material, nonpublic information – the total volume of trading was 695,400 shares or well over 25 times the amount the tippees traded.  Further, on July 30, 2020 – the day of Precipio's public announcement, after which Defendant Timothy Iberger sold 10,000 shares – the total volume of trading was 13.4 million shares or over 1,340 times the amount Defendant Timothy Iberger sold.  Given this trading volume, it is not feasible or practical for the Commission to identify specific harmed investors and quantify their financial harm.

13.    Because distribution to harmed investors is not feasible, the only alternative consistent with equitable principles is to send the disgorged funds to the Treasury.  Allowing Defendant Timothy Iberger to retain the funds would be inequitable.  As noted by the Supreme Court, insider trading blights our capital markets, degrading investor confidence, because it enables violators to profit through deceit.  *See United States v. O'Hagan*, 521 U.S. 642, 658-59

---

[2] *Liu* reasoned that the phrase "for the benefit of investors" in Section 21(d)(5) "restricts" the equitable relief that may be awarded under that provision, but left as an "open question" whether "depositing disgorgement funds with the Treasury may be justified where it is infeasible to distribute the collected funds to investors."  140 S. Ct. at 1948.  Congress's omission of the "for the benefit of investors" restriction in Section 21(d)(7), combined with its description of disgorgement as a remedy aimed at preventing "unjust enrichment" in Section 21(d)(3)(A)(ii), evinces a congressional intent that courts be able to send disgorged funds to the Treasury where disgorgement is an appropriate equitable remedy for violations of the federal securities laws.

5

(1997) ("An investor's informational disadvantage vis-à-vis [an insider trader] with material, nonpublic information stems from contrivance; it is a disadvantage that cannot be overcome with research of skill."). Preservation of investor confidence requires that defendants settling claims of insider trading, such as Defendant Timothy Iberger, be deprived of trading profits.

14. Distribution to the Treasury here serves the "foundational" principle of equity that no person should profit from his own wrong. *Liu*, 140 S. Ct. at 1943, 1948. Allowing the disgorged funds to remain in Defendant Timothy Iberger's hands would frustrate that basic equitable principle. As between the violator and the Treasury, it is more equitable that collected funds be disbursed to the latter so as not to incentivize fraud. *See Kansas v. Nebraska*, 574 U.S. 445, 463 (2015) (equity supports ordering disgorgement to "remind [a violating party] of its legal obligations" and to "deter future breaches"); Restatement (First) of Restitution § 187 (1937) (discussing the constructive trust remedy that prevented a murderer from inheriting his victims' estates, and made the murderer the constructive trustee for innocent persons who but for the murder would not have inherited the estate).

15. Further, equity recognizes that if, as in this case, distribution to a victim is not feasible, disgorged funds may be awarded to the *cy pres* (i.e., nearest possible) alternative. *Pearson v. Target Corp.*, 968 F.3d 827, 837 (7th Cir. 2020) (applying *Liu v. SEC*). And, in the securities laws, "Congress made payment to the Treasury the *cy pres* alternative … to payment to victims of fraud when payment to the victims is infeasible." *SEC v. Custable*, 796 F.3d 653, 656 (7th Cir. 2015); *see also Kansas*, 574 U.S. at 456 ("[W]hen federal law is at issue and the public interest is involved, a federal court's equitable powers assume an even broader and more flexible character than when only a private controversy is at stake.").

WHEREFORE, the SEC respectfully requests that this Court grant this Motion and enter

the proposed Final Judgments attached hereto.

Respectfully submitted,

**SECURITIES AND EXCHANGE COMMISSION**

By its attorneys,

//s// *Richard M. Harper II*
Richard M. Harper II (MA BBO No. 634782)
Martin F. Healey (MA BBO No. 227550)
Xinyue Angela Lin (MA BBO No. 672786)
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA  02110
(617) 573-8979 (Harper)
(617) 573-4590 (Facsimile)
HarperR@sec.gov

Dated:  April 15, 2022

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(2), Commission counsel conferred in good faith with defendants' counsel prior to the filing of this motion.

//s// *Richard M. Harper II*
Richard M. Harper II

### CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2022, a true and correct copy of this document was filed through the Court's CM/ECF system and, accordingly, the document will be sent electronically to all participants registered to receive electronic notice in this case.  I also emailed a copy of this motion to Defendant Carl Iberger's counsel, Tucker DeVoe, Esq., Goodwin Procter LLP, TDeVoe@goodwinlaw.com, and Defendant Timothy Iberger's counsel, Michael Bachner, Esq., Bachner & Associates, PC, mb@bhlawfirm.com.

//s// *Richard M. Harper II*
Richard M. Harper II

7